# Exhibit 7

The Honorable Christopher F. Droney
United States District Court
Abraham Ribicoff Federal Building
450 Main Street, Suite 228
Hartford, CT 06103

April 3rd, 2009

Dear Judge Droney:

Re:  United States v. John Houldsworth

*Introduction:*
My name is Michael J. Cascio.  Professionally, I am a Fellow of the Casualty Actuarial
Society ("FCAS") and a Member of the American Academy of Actuaries ("MAAA").  I
hold a Certificate of Director Education issued by the National Association of Corporate
Directors.  Personally, I have known John Houldsworth since 1985.  John and his legal
counsel have asked me to provide the court a letter on his behalf in connection with the
Court's determination of his sentence.

I currently serve as a Director on the Boards of Philadelphia Insurance Company and IPC
Re (in Bermuda).  I operate my own consulting company out of my home just outside of
Philadelphia since 2002, recently incorporated as Maragold Enterprises LLC, which
provides actuarial services, expert witness work and arbitration assistance.  I have held
various management positions in insurance and reinsurance companies over my career,
primarily operating as an actuary, underwriter and most recently as President and CEO of
OPUS Re, a wholly owned subsidiary of Overseas Partners Limited.

*Background:*
I was born in Brooklyn, NY in 1955, but I consider Stamford, Connecticut my home
town, as my family mover there when I was 3.  I attended school in Stamford from
Kindergarten (Springdale School) through High School (Stamford Catholic High School,
Class of 1973).  I graduated with a BS in Mathematics from Central Connecticut State
University in 1977 and taught High School Mathematics and Physics for 2 years in
Southington Connecticut before joining the Travelers in 1979 at their home office in
Hartford to begin a career as an actuary.

In 1985 I began working for KPMG, where I started their actuarial consulting practice in
Bermuda.  John was employed as an accountant there, which is where we first met.  We
became friends shortly after I joined KPMG, as we both had similar interests, especially
sports.  We sat in adjoining cubicles for approximately 2 years.

*Stories of Interest:*

I hope the following stories are not inappropriate, but I felt that true life events outside of the business world will shine some light on John as a special person. We played together on the KPMG softball team for a few seasons. We also played in a regular weekend golf foursome for about 4 years. I would like to share 2 sports stories with you, that I believe helps define the character of John.

One softball season, we made it to the finals, despite having many players who were from "the other side of the pond" and had only played cricket growing up. It was the best 2 out of 3. We won the first game fairly convincingly. John normally played shortstop and I was the pitcher. About midway through the 2nd game, I began to lose control and walked many batters, enabling the other team to score many runs and beat us soundly, despite having few hits. In about the 5th inning or so, I approached John (the coach) & took myself off the mound, as I was having enormous problems throwing a single strike, never mind two or three.

When the 3rd and deciding game began immediately following game 2, John approached me with the ball in his hand. Although I cannot remember the exact words, he essentially said that I was the reason we had gotten this far and saw no reason why I shouldn't pitch the final game. When I questioned his judgment, he merely stated that he could see no one else getting us the win.

After pitching like a complete moron in game 2 and having zero confidence in myself as I left the mound, John inspired me. I went on to pitch very well and we won easily the deciding game. It was the only softball championship for the office in the 16 years I resided in Bermuda. It was a moment I will never forget. I was awarded the game ball, signed by all the players. John wrote one word on it, "Destiny". The character a person displays on the diamond I believe is not unique to the situation, but rather, is indicative of the quality of the individual in all walks of life.

My golf story is more a testament of John's integrity as an honest person. John was a single digit handicap golfer while in Bermuda, while I was fortunate if I broke 100. He routinely broke 80, but never shot even par or below par. One day going into the last hole, he was even par through 17 holes. As he had never been even par on a round in his life, it was certainly something he wanted to achieve.

The last hole at Port Royal is a challenging 400+ yard hole straight uphill. It is also somewhat narrow with many traps lining the fairway and protecting the green. The pressure was obvious, as John hooked his tee shot well left. He was able to hook an iron back into contention. It actually landed on the green about 15 feet from the cup, although it was a downhill putt and across a sloping green. Although a single putt would place him under par, a two putt would be even par and perfectly acceptable from his perspective. After playing 17 holes at even par, a two putt scenario seemed like a forgone conclusion. The rest of us played out so that he could have the green to himself.

I had a pit in my stomach, as I was nervous for him. As he stood over the putt for what seemed like an eternity, three players were watching intently, waiting for history to be made. John then uncharacteristically stepped away from the ball and proclaimed that he had just taken a stroke. I had no idea what he was talking about so I questioned this assertion. He stated that the ball had slightly moved while he was addressing the putt, so that was his 3rd shot on the hole. None of the 3 of us saw the ball move, so we replied that it didn't count as a stroke as none of saw the ball move.

John corrected us. He said it didn't matter that we had not seen the ball. What mattered was that he inadvertently moved the ball (likely an angstrom or less in distance), which constituted a stroke. Now the situation changed completely, as he went from a chance to shoot under par to now needing to hole out a tricky putt just to preserve par. The pit in my stomach was now the size of a watermelon. As soon as he struck the ball, we all started cheering for the putt to go in. The ball did get to the cup, but lipped out. He tapped in for a five, one over par for the day. It was a great round, but a greater display of a man exuding honesty and integrity. I do not believe he has ever shot par (or less) to this day.

*Closing Remarks:*
I would be remiss if I did not follow up my "story segment" of this letter with a few words of John's dedication to his wife and family. When we no longer lived in the same country, John and I kept in touch with frequent phone calls, emails and occasional meetings at industry functions. Our families would get together every 2 or 3 years, so I have seen his three children grow up. Our wives get along very well, so it is always a good time. In fact, the families are planning to get together in Ireland this summer, as I will be there attending Board meetings.

John is the consummate family man. He is a devoted and loyal husband, something you do not see very often these days. I believe the most important decision a man makes is the woman he chooses as his wife, and John chose very well. He is very involved in all of his children's lives, as he frequently coaches the teams they play on.

One cannot help but be struck by the cohesiveness of their family unit. It would be a real shame for this unit to be separated as a result of this single unfortunate and uncharacteristic event. It would be a very severe blow to his wife Ruth and his three children, all innocent victims. They have been through some trying times over the last few years as a result of this case.

Although I did not attend any of the hearings, I would expect that John's honesty and integrity radiated each day. He did not try and feign innocence, but rather accepted responsibility for his actions right from the start. I would expect that his role in the trials was in stark contrast to those who maintained a "not guilty" posture. He may not have broken par, but he was man enough to count all his strokes and accept responsibility for his actions. His behavior remains consistent and admirable, even under difficult circumstances.

It is not my place to state what I believe the sentence for John should be in this matter. I would, at the risk of perhaps appearing bold, ask you to please show mercy and leniency towards John to the greatest extent you can. I believe firmly that John will never err in his professional business dealings again, as the toll it has taken on him and his family has been a lesson well learned.

I would like to close by adding that I would be happy to answer any questions you may have about John. To the extent that any of the above is unclear, then I will make myself available so that I can provide to you the information necessary to make an informed and complete assessment of John's character and personality. I feel I know him quite well and should be able to help out, as required. I am planning on attending the sentencing too, assuming the date does not conflict with my business travel.

I can be reached at home at 215-233-3484 or on my cell at 267-253-9594. I can also be reached via email at mcascio9@verizon.net. I cannot thank you enough for taking the time out of your schedule, which I can only imagine is very hectic, to consider my plea on behalf of a good friend and a great human being.


Sincerely,

Michael J. Cascio
FCAS, MAAA